## TOWN OF DARIEN *v.* ESTATE OF F. FRANCIS D'ADDARIO ET AL.
## (SC 16350)

McDonald, C. J., and Borden, Norcott, Katz and Vertefeuille, Js.*

Argued January 16—officially released December 4, 2001

---

\* Although Chief Justice McDonald reached the mandatory age of retirement before the date that this opinion was officially released, his continued participation on this panel is authorized by General Statutes § 51-198 (c).

The listing of justices reflects their seniority on this court as of the date of argument.

*Jay H. Sandak*, with whom were *Gary S. Klein* and, on the brief, *Timothy S. Hollister*, for the appellant (intervening defendant).

*John Wayne Fox*, with whom, on the brief, was *Patricia M. Gaug*, for the appellee (plaintiff).

*Opinion*

KATZ, J. This appeal concerns General Statutes § 48-13,[1] and whether the trial court properly granted the application of the plaintiff, the town of Darien (town), to enter the property of the intervening defendant AvalonBay Communities, Inc. (AvalonBay),[2] to conduct an

---

[1] General Statutes § 48-13 provides: "Upon filing a notice of condemnation of a condemning authority, either before or after the institution of a condemnation proceeding and after reasonable notice to the property owner or owners affected, the Superior Court or any judge thereof may authorize such condemning authority to enter upon and into land and buildings sought or proposed for public uses for the purpose of inspection, survey, borings and other tests. Such condemning authority shall be responsible to the owner or owners of such property for any damage or injury caused by such entrance and use, and such court or judge may require the filing of a bond or deposit of surety to indemnify the owner or owners of property for such damage. This section shall not limit or modify rights of entry upon private property otherwise provided for by law."

[2] The original defendants in this action included: the estate of F. Francis D'Addario; David D'Addario and Lawrence D'Addario, both in their individual capacities as heirs and as executors and trustees of the estate of F. Francis D'Addario; Albert Paolini, as executor and trustee of the estate of F. Francis D'Addario; Joan D. Benedetto; and Ernest J. Benedetto, as trustee of the Joan D. Benedetto Grantor Retained Income Trust Indenture. We refer to these defendants as the D'Addario defendants. As discussed in footnote 8 of this opinion, AvalonBay, as the contract purchaser of the property, intervened as a defendant before the trial court, and is the only defendant in this appeal.

environmental inspection prior to initiating condemnation proceedings to take the property. AvalonBay contends that the trial court improperly granted the town's application to gain access to the property before the town had taken any official action to condemn. AvalonBay also claims that § 48-13 is unconstitutional under the United States and Connecticut constitutions because it authorizes the taking of property without just compensation,[3] and that the trial court improperly declined to address whether the town's proposed access to the property prior to condemnation constituted an unconstitutional warrantless administrative search.[4]

The record contains the following facts. The property at issue in this case is 137–139 Hollow Tree Ridge Road (property), a vacant parcel of approximately 33 acres located in the town. In June, 1999, the town filed in the

---

[3] The fifth amendment to the United States constitution, which is applicable to the states through the fourteenth amendment; see *Phillips* v. *Washington Legal Foundation*, 524 U.S. 156, 163–64, 118 S. Ct. 1925, 141 L. Ed. 2d 174 (1998); provides in relevant part that "private property [shall not] be taken for public use, without just compensation."

Article first, § 11, of the Connecticut constitution provides that "[t]he property of no person shall be taken for public use, without just compensation therefor."

[4] The fourth amendment to the United States constitution, which is applicable to the states through the fourteenth amendment; see *Minnesota* v. *Dickerson*, 508 U.S. 366, 372, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993); provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Article first, § 7, of the Connecticut constitution provides that "[t]he people shall be secure in their persons, houses, papers, and possessions from unreasonable searches and seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

Superior Court an application and "Notice of Proposed Condemnation" seeking an order authorizing it to enter and inspect the property and to conduct "testing associated with a Phase I and Phase II environmental assessment . . . ." The town served on the D'Addario defendants, the owners of the property at that time; see footnote 2 of this opinion; the notice of the proposed condemnation advising them of its desire to test the property prior to making a formal decision about whether to condemn the property. In its application and notice of the proposed condemnation, the town requested that the trial court order the D'Addario defendants to appear and show cause as to why the trial court should not grant the town's application to inspect and test the property under § 48-13. The trial court granted that request.

At the show cause hearing held on July 26, 1999, the trial court granted AvalonBay's motion to intervene as a defendant. AvalonBay had maintained a contract, contingent upon certain development approvals, to purchase the property from the D'Addario defendants. Although AvalonBay had obtained preliminary approvals, an appeal was pending at the time of the hearing in this case, and it had not yet purchased the property. Both the D'Addario defendants and AvalonBay were represented by counsel at the show cause hearing.

Robert F. Harrel, Jr., first selectman for the town, testified that he had first discussed purchasing the land on behalf of the town with the D'Addario defendants in 1997. The town, through the board of selectmen, had identified several public purposes for which the property could be put to use, including a multi-generational center, a low income senior housing development, community athletic facilities, and a commuter parking facility. Neither the board of selectmen nor the representative town meeting had voted definitively to

pursue any one of the identified potential public uses. In January, 1999, however, the board of selectmen adopted a resolution authorizing Harrel, as the town's first selectman, to investigate and take appropriate steps to condemn the property.[5]

[5] The resolution provided: "WHEREAS, the Town of Darien, is desirous of acquiring the 33 acre D'Addario tract of land situated off Hollow Tree Ridge Road for its municipal purposes; and

"WHEREAS, the Town of Darien has not been able to agree with the owner upon the amount to be paid for said property;

"NOW, THEREFORE, it is:

"RESOLVED, that the First Selectman is authorized to initiate and take all appropriate steps, pursuant to Federal, State and Local laws, to acquire by condemnation or other legal means the 33 acre D'Addario property situated on the west side of Hollow Tree Ridge Road. He is further instructed to take the following steps:

"1. Direct Town Counsel to prepare a step-by-step procedure to be followed by the appropriate governmental authorities to effectuate the condemnation of the property.

"2. Direct Town Counsel to obtain alternate appraisals of the property as follows:

"(A) The value of the property without a right of way for all lawful purposes in, over and upon the [adjacent] property which gives access to Hollow Tree Ridge Road;

"(B) The value of the property if it is determined that the property does in fact have a right of way for all lawful purposes in, over and upon the [adjacent] property which gives access to Hollow Tree Ridge Road.

"3. Direct Town Counsel to obtain permission, either from the principal owners of the property or by statute from the court of appropriate jurisdiction, to perform an environmental assessment of the subject property, including but not limited to establishing the cost of the remediation thereof.

"4. Submit a referral, pursuant to Section 8-24 of the Connecticut General Statutes, to the Planning and Zoning Commission for its report concerning the acquisition, by condemnation or other legal means, of the subject property.

"5. Request alternative appropriations from the Board of Finance for sums equal to the appraised value of the property with a right of way to and from Hollow Tree Ridge Road and without such a right of way, less the cost of environmental remediation of the property.

"6. Request alternative appropriations from the [Representative Town Meeting] for sums equal to the appraised value of the property with a right of way to and from Hollow Tree Ridge Road and without such a right of way, less the cost of environmental remediation of the property and to obtain appropriate legislative approval for the acquisition of the property by condemnation and then to take all necessary steps, including the filing of the Statement of Compensation and Certificate of Taking, to obtain title

John Adams, a state licensed environmental professional, also testified at the hearing. Adams testified that a Phase I environmental assessment would involve a visual inspection of the property, as well as an historical investigation and records search, to gauge the likelihood that the site had been exposed to soil, groundwater, or other environmental contamination. Adams described a Phase II study as more "intrusive" than a Phase I assessment. The Phase II study would investigate the issues raised by the Phase I assessment and attempt to determine, through the testing of soil and groundwater samples, whether contamination existed, and the nature and extent of that contamination.[6]

The trial court granted the town's application to conduct a Phase I assessment pursuant to § 48-13. The court did not authorize the town to conduct a Phase II assessment, however, and indicated that the town would be allowed to proceed with Phase II sampling and testing "only if it demonstrate[d] a need for the testing" and "receive[d] judicial permission . . . ."

In its memorandum of decision, the trial court addressed the constitutionality of § 48-13, concluding

to said property.

"7. Execute any and all documents and perform all requirements to achieve the acquisition of the property by condemnation proceedings."

[6] Consistent with the testimony before the trial court, a leading treatise on eminent domain states that "[a] Phase I environmental audit is an analytical means for identifying the presence of environmental contamination on a particular property due to current or pre-acquisition activities on that site. . . . [It] consists of three main components: (1) a review of the historical records of the property; (2) a site inspection and walk-through; and (3) a site characterization report." 8 P. Nichols, Eminent Domain (3d Ed. Rev. 2001, P. Rohan & M. Reskin eds.) § 14C.05[3], pp. 14C-49 through 14C-50. "The Phase II audit consists primarily of sampling, i.e., the collection and analysis of soils and/or other materials on the site. The principle components of sampling are; (1) development of the sampling plan; (2) preparation for revisiting the site; (3) conducting the sampling visit; and (4) making recommendations for further action." Id., § 14C.05[4], pp. 14C-53 through 14C-54.

that "entering private property to conduct [a Phase I] inspection for a proposed condemnation fails to qualify as a taking." Although it did not authorize the town to enter the property for any purpose other than the Phase I inspection, the trial court concluded that a more intrusive Phase II assessment, which, potentially, could include the collection of water and soil samples, would not necessarily rise to the level of an unconstitutional taking. In addition, the trial court determined that the formal notice procedure governing condemnation actions did not apply to precondemnation actions under § 48-13, and concluded further that the town was not required by General Statutes (Rev. to 1999) § 48-21[7] to serve notice on subsequent lienholders in applying for access to the property under § 48-13. Finally, the trial court declined to address whether the proposed testing of the property would constitute an administrative search because, in its view, AvalonBay lacked standing.

[7] General Statutes (Rev. to 1999) § 48-21 provides: "In any proceeding brought under the provisions of subsection (b) or (e) of section 13a-73 or section 13a-74, 13a-76, 13a-77, 13a-78 or section 19a-645 or subsection (a), (b) or (c) of section 32-635 or sections 32-636 to 32-640, inclusive, notice shall be given to all persons appearing of record as holders of any mortgage, lien or other encumbrance on any real estate or interest therein which is to be taken by right of eminent domain or by condemnation proceedings, in the same manner as notice is required to be given to the owner of such property; and the amount due any such mortgagee, lienor or other encumbrancer, not exceeding the amount to be paid for such property, shall be paid to him according to priority of claims, before any sum is paid to any owner of such property. In case of dispute as to the amount due any such mortgagee, lienor or other encumbrancer, the money may be deposited with the clerk of the superior court for the judicial district in which such property is situated, and anyone claiming an interest in the same may bring suit therefor, making all others claiming interest in the fund defendants, and the court may determine the rights in the fund of all parties to such suit, and may tax costs according to the rules of equity."

Public Acts 1999, No. 99-241, § 59, and Public Acts 2000, No. 00-140, § 27, made technical changes to the internal statutory references that are not relevant to this case.

The trial court reasoned that AvalonBay's interest in purchasing the property did not give it the requisite "reasonable expectation of privacy" therein necessary to contest the alleged search. See *State* v. *Hill*, 237 Conn. 81, 92, 675 A.2d 866 (1996).

AvalonBay appealed to the Appellate Court, which granted its motion to be substituted as the defendant.[8] Thereafter, we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c). After oral argument in this appeal, we sua sponte ordered the parties to address the following question in supplemental briefs: "Whether, as a matter of statutory interpretation of . . . § 48-13, the [town] was authorized to conduct the environmental inspection involved in the present case." More specifically, we directed the parties "to address, inter alia: (1) the meaning of 'notice of condemnation' as [that phrase is] used in § 48-13; (2) the meaning of 'a condemning authority' as used therein; (3) what body or agency [would constitute] the 'condemning authority' under the facts of this case; and (4) the relationship, if any, between General Statutes §§ 48-13 and 8-129, between [General Statutes] §§ 48-13 and 48-6, and between § 48-13 and any other relevant statute."

In response to this order, AvalonBay contends that, in order to survive a constitutional challenge, § 48-13 "must be read in conjunction with the legislative process and the procedural steps outlined in [General Stat-

---

[8] AvalonBay completed its purchase of the property on January 21, 2000. Thus, AvalonBay is the sole defendant in this appeal. See footnote 2 of this opinion.

utes] §§ 48-6,[9] 48-12,[10] [and] 8-128 through 8-133."[11] As noted previously; see footnote 1 of this opinion; General

[9] General Statutes § 48-6 provides: "(a) Any municipal corporation having the right to purchase real property for its municipal purposes which has, in accordance with its charter or the general statutes, voted to purchase the same shall have power to take or acquire such real property, within the corporate limits of such municipal corporation, and if such municipal corporation cannot agree with any owner upon the amount to be paid for any real property thus taken, it shall proceed in the manner provided by section 48-12 within six months after such vote or such vote shall be void.

"(b) In the case of acquisition by a redevelopment agency of real property located in a redevelopment area, the time for acquisition may be extended by the legislative body upon request of the redevelopment agency, provided the owner of the real property consents to such request.

"(c) In accordance with the policy established in section 7-603, any municipal corporation may take property which is located within the boundaries of a neighborhood revitalization zone identified in a strategic plan adopted pursuant to sections 7-601 and 7-602. The acquisition of such property shall proceed in the manner provided in sections 8-128 to 8-133, inclusive, and section 48-12."

[10] General Statutes § 48-12 provides: "The procedure for condemning land or other property for any of the purposes specified in sections 48-3, 48-6, 48-8 and 48-9, if those desiring to take such property cannot agree with the owner upon the amount to be paid him for any property thus taken, shall be as follows: The Comptroller in the name of the state, any town, municipal corporation or school district, or the trustees or directors of any state institution in the name of the state, shall proceed in the same manner specified for redevelopment agencies in accordance with sections 8-128, 8-129, 8-129a, 8-130, 8-131, 8-132, 8-132a and 8-133."

[11] AvalonBay relies principally on the procedures in General Statutes §§ 8-128 and 8-129. General Statutes § 8-128 provides: "Within a reasonable time after its approval of the redevelopment plan as hereinbefore provided, the redevelopment agency may proceed with the acquisition or rental of real property by purchase, lease, exchange or gift. The redevelopment agency may acquire real property by eminent domain with the approval of the legislative body of the municipality and in accordance with the provisions of sections 8-129 to 8-133, inclusive, and this section. The legislative body in its approval of a project under section 8-127 shall specify the time within which real property is to be acquired. The time for acquisition may be extended by the legislative body in accordance with section 48-6, upon request of the redevelopment agency, provided the owner of the real property consents to such request. Real property may be acquired previous to the adoption or approval of the project area redevelopment plan, provided the property acquired shall be located within an area designated on the general plan as an appropriate redevelopment area or within an area whose boundaries are defined by the planning commission as an appropriate area for a redevelopment project, and provided such acquisition shall be authorized

by the legislative body. The redevelopment agency may clear, repair, operate or insure such property while it is in its possession or make site improvements essential to preparation for its use in accordance with the redevelopment plan."

General Statutes § 8-129 provides: "The redevelopment agency shall determine the compensation to be paid to the persons entitled thereto for such real property and shall file a statement of compensation, containing a description of the property to be taken and the names of all persons having a record interest therein and setting forth the amount of such compensation, and a deposit as provided in section 8-130, with the clerk of the superior court for the judicial district in which the property affected is located. Upon filing such statement of compensation and deposit, the redevelopment agency shall forthwith cause to be recorded, in the office of the town clerk of each town in which the property is located, a copy of such statement of compensation, such recording to have the same effect as and to be treated the same as the recording of a lis pendens, and shall forthwith give notice, as hereinafter provided, to each person appearing of record as an owner of property affected thereby and to each person appearing of record as a holder of any mortgage, lien, assessment or other encumbrance on such property or interest therein (a), in the case of any such person found to be residing within this state, by causing a copy of such notice, with a copy of such statement of compensation, to be served upon each such person by a state marshal, constable or an indifferent person, in the manner set forth in section 52-57 for the service of civil process and (b), in the case of any such person who is a nonresident of this state at the time of the filing of such statement of compensation and deposit or of any such person whose whereabouts or existence is unknown, by mailing to each such person a copy of such notice and of such statement of compensation, by registered or certified mail, directed to his last-known address, and by publishing such notice and such statement of compensation at least twice in a newspaper published in the judicial district and having daily or weekly circulation in the town in which such property is located. Any such published notice shall state that it is notice to the widow or widower, heirs, representatives and creditors of the person holding such record interest, if such person is dead. If, after a reasonably diligent search, no last-known address can be found for any interested party, an affidavit stating such fact, and reciting the steps taken to locate such address, shall be filed with the clerk of the superior court and accepted in lieu of mailing to the last-known address. Not less than twelve days nor more than ninety days after such notice and such statement of compensation have been so served or so mailed and first published, the redevelopment agency shall file with the clerk of the superior court a return of notice setting forth the notice given and, upon receipt of such return of notice, such clerk shall, without any delay or continuance of any kind, issue a certificate of taking setting forth the fact of such taking, a description of all the property so taken and the names of the owners and of all other persons having a record interest therein. The redevelopment agency shall cause such certificate of taking to be recorded in the office of the town clerk of each town in which such property is located. Upon the

Statutes § 48-13 provides in relevant part that "[u]pon filing a notice of condemnation of a condemning authority, either before or after the institution of a condemnation proceeding and after reasonable notice to the property owner or owners affected, the Superior Court or any judge thereof may authorize such condemning authority to enter upon and into land and buildings

recording of such certificate, title to such property in fee simple shall vest in the municipality, and the right to just compensation shall vest in the persons entitled thereto. At any time after such certificate of taking has been so recorded, the redevelopment agency may repair, operate or insure such property and enter upon such property, and take whatever action is proposed with regard to such property by the project area redevelopment plan. The notice referred to above shall state (a) that not less than twelve days nor more than ninety days after service or mailing and first publication thereof, the redevelopment agency shall file, with the clerk of the superior court of the judicial district in which such property is located, a return setting forth the notice given, (b) that upon receipt of such return such clerk shall issue a certificate for recording in the office of the town clerk of each town in which such property is located, (c) that upon the recording of such certificate, title to such property shall vest in the municipality, the right to just compensation shall vest in the persons entitled thereto and the redevelopment agency may repair, operate or insure such property and enter upon such property and take whatever action may be proposed with regard thereto by the project area redevelopment plan and (d) that such notice shall bind the widow or widower, heirs, representatives and creditors of each person named therein who then or thereafter may be dead. When any redevelopment agency acting in behalf of any municipality has acquired or rented real property by purchase, lease, exchange or gift in accordance with the provisions of this section, or in exercising its right of eminent domain has filed a statement of compensation and deposit with the clerk of the superior court and has caused a certificate of taking to be recorded in the office of the town clerk of each town in which such property is located as herein provided, any judge of such court may, upon application and proof of such acquisition or rental or such filing and deposit and such recording, order such clerk to issue an execution commanding a state marshal to put such municipality and the redevelopment agency, as its agent, into peaceable possession of the property so acquired, rented or condemned. The provisions of this section shall not be limited in any way by the provisions of chapter 832."

Section 8-129 was amended after the time of the relevant proceedings in this case. See Public Acts 2000, No. 00-99, § 24 (changing references to sheriffs and deputies to state marshals). The changes were minor and technical in nature, and were not relevant to this appeal. For purposes of clarity, we refer herein to the current revision of the statute.

sought or proposed for public uses for the purpose of inspection, survey, borings and other tests. . . ." AvalonBay contends that, to gain access and conduct inspections and tests under § 48-13, the town first must follow the procedures for condemning the land in accordance with § 48-6, the statute governing municipal condemnation actions. See footnote 9 of this opinion. AvalonBay claims that "a municipality is not authorized to proceed as the condemning authority [under § 48-13] until legislative approval has been granted" in accordance with §§ 48-6 and 8-128. AvalonBay argues that the town may be the condemning authority under § 48-13, "if, and only if, its legislative body . . . voted to condemn the [property] for a specific municipal purpose," and that, "when a municipality proceeds under . . . § 48-13, it must first obtain municipal legislative approval because a municipality's power to condemn is derived from . . . § 48-6, which requires such a vote." Although AvalonBay acknowledges that under General Statutes § 7-148 (c) (3) (A),[12] the town "is empowered to take or acquire private property for public use or purpose," it maintains that, because the town must obtain approval in accordance with its charter before exercising the power to condemn, it must also obtain such approval to be the condemning authority under § 48-13.

---

[12] General Statutes § 7-148 provides in relevant part: "(c) Powers. Any municipality shall have the power to do any of the following, in addition to all powers granted to municipalities under the constitution and general statutes . . .

"(3) Property. (A) Take or acquire by gift, purchase, grant, including any grant from the United States or the state, bequest or devise and hold, condemn, lease, sell, manage, transfer, release and convey such real and personal property or interest therein absolutely or in trust as the purposes of the municipality or any public use or purpose, including that of education, art, ornament, health, charity or amusement, cemeteries, parks or gardens, or the erection or maintenance of statues, monuments, buildings or other structures, or the encouragement of private commercial development, require. . . ."

In response, the town maintains that the trial court properly applied § 48-13 and correctly decided the constitutional questions. Specifically, the town contends that the statutes governing the condemnation procedure upon which AvalonBay relies "are not relevant to § 48-13 . . . ." According to the town: (1) it had not yet exercised its power to condemn the property in this case; (2) the language of § 48-13 does not reference § 48-6 or any other statute, but generally refers to a condemning authority; and (3) as used in § 48-13, condemning authority encompasses those entities to which the state has validly delegated the power of eminent domain, regardless of whether such condemning authority properly has commenced the exercise of that power under the statutory procedures. Essentially, the town contends that it is the condemning authority under § 48-13 by virtue of § 7-148 (c) (3) (A), and that it need not obtain the legislative approval required for formal condemnation proceedings pursuant to § 48-6 prior to seeking authorization from the Superior Court to enter the property under § 48-13.[13] For the reasons that follow, the case that underlies this appeal has become moot, and as a result, this court lacks subject matter jurisdiction.

During the pendency of this appeal, AvalonBay filed a motion to remand the case to the Superior Court for a hearing on subject matter jurisdiction, claiming that intervening events had rendered the appeal moot. AvalonBay claimed that, because the town's board of select-

---

[13] Consistent with its argument concerning a condemning authority, AvalonBay also claims that the notice of condemnation required by § 48-13 "is a notice given by a municipality that has been legislatively authorized as required by . . . §§ 48-6 and 8-128 to condemn land for a specific public purpose." AvalonBay contends that, although the phrase notice of condemnation is not defined in any other statute, it "presupposes that a condemnation had been authorized," and that the town has identified "specific private property for a specified [public] use . . . ." The town maintains that the notice contemplated in § 48-13 is simply a "procedural device" that places the application for access to the property before the Superior Court.

men and board of finance had adopted further resolutions to proceed with condemning the property, the town had "abandoned" its plan to enter and conduct tests pursuant to § 48-13.[14] Furthermore, because AvalonBay, in conjunction with its efforts to obtain a building permit, had submitted to the town's planning and zoning commission, its own Phase I and Phase II environmental assessment, which the town reviewed independently for information concerning the proposed condemnation, AvalonBay claimed that the town had no need to conduct its own inspection and testing. Therefore, according to AvalonBay, this court could not grant the town any practical relief in deciding this appeal.

"It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . In the absence of an actual and existing controversy for us to adjudicate . . . the courts of this state may not be used as a vehicle to obtain judicial opinions upon points of law . . . and where the question presented is purely academic, we must refuse to entertain the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Citation omitted; internal

---

[14] Specifically, on June 11, 2001, the town's board of selectmen adopted a resolution to condemn the property and an adjoining three acre parcel for $27,600,000, which amount was to be used for "the acquisition of the AvalonBay . . . tract of land and . . . for purposes of environmental remediation . . . ." On June 20, 2001, the board of finance approved the expenditure of $19,750,000 for the condemnation of the thirty-three acre AvalonBay property, and for unspecified environmental remediation costs. Thereafter, on July 9, 2001, the town's representative town meeting voted fifty-three to twenty-one to condemn formally the property for compensation of $19,750,000.

quotation marks omitted.) *AvalonBay Communities, Inc.* v. *Orange*, 256 Conn. 557, 585, 775 A.2d 284 (2001); *Green Rock Ridge, Inc.* v. *Kobernat*, 250 Conn. 488, 497, 736 A.2d 851 (1999).

We denied AvalonBay's motion for remand, concluding that the issue of whether the town may gain access to the property prior to condemnation under § 48-13 was not moot. Even though the town had taken further preliminary actions toward an eventual exercise of its statutory condemnation power, it had not commenced formal condemnation proceedings. Indeed, the legislative body of the town—the representative town meeting—had not yet voted to condemn the property. Additionally, because it was dissatisfied with the results of AvalonBay's environmental assessment, the town intended to utilize § 48-13 to gain precondemnation access to the property for further inspections and tests. Hence, at that stage, a controversy still existed, and we denied AvalonBay's motion.

Thereafter, based on subsequent events, AvalonBay again moved this court to remand the case for a hearing on the issue of lack of subject matter jurisdiction. The town opposed the motion, arguing that the case was not moot, and that, even if it were, because the issue on appeal is capable of repetition yet evading review, we should retain jurisdiction over the appeal.[15] We agree with AvalonBay that these most recent events preclude this court from granting any practical relief through its disposition of the merits. Accordingly, the case has become moot. *AvalonBay Communities, Inc.* v. *Orange,* supra, 256 Conn. 585.

[15] The town also argued that a remand was not necessary because this court certainly is capable of determining, particularly when the facts are undisputed, whether the case is now moot as a result of the events that transpired while the appeal was pending. See *Ayala* v. *Smith,* 236 Conn. 89, 94, 671 A.2d 345 (1996). We agree and therefore resolve the issue of subject matter jurisdiction.

According to the parties, on July 23, 2001, in accordance with the Darien charter, the town clerk verified that sufficient signatures had been filed to subject the representative town meeting's July 9, 2001 formal condemnation vote to a townwide referendum. See footnote 14 of this opinion. The board of selectmen scheduled the referendum for September 25, 2001. The issue before the voters was whether to overturn the representative town meeting's July 9 vote to condemn the property. On September 25, 2001, by a vote of 3207 to 2505, the voters overturned the July representative town meeting's decision to condemn the subject property.

Under the Darien charter, the legislative body of the town is the representative town meeting.[16] Under § 28 of the Darien charter the board of selectmen is authorized to acquire land for "public parks and public parkways . . . ."[17] The board of selectmen's resolution in this case delegated to the first selectman the power "to initiate and take all appropriate steps . . . to acquire [the property] by condemnation or other legal means . . . ." See footnote 5 of this opinion. The resolution also instructed the first selectman to "[s]ubmit a referral" to the planning and zoning commission for its report

---

[16] Section 48 (a) of the Darien charter provides: "The right to vote at town meetings of the town of Darien, except meetings for the election of town officers, shall be limited to town meeting members elected as provided in this act, and the legislative power of the town shall be vested in the representative town meeting."

[17] Section 28 of the Darien charter provides: "The town is authorized to take land, by condemnation proceedings, for the purpose of public parks and parkways within its limits, and to lay out, improve and maintain the same. The board of selectmen, on its behalf, is authorized to acquire such land for such purposes. If it cannot agree with the owner upon the amount to be paid him [or her] for land thus taken, it may proceed to condemn such land in the manner set forth in section 48-12 of the general statutes, as it may be amended; provided no such land shall be taken for such purposes unless the town planning and zoning commission shall first have approved in writing the site to be taken and have certified that public necessity and public convenience require such taking."

and, eventually, "to obtain appropriate legislative approval for the acquisition of the property by condemnation and then to take all necessary steps . . . to obtain title to said property." See footnote 5 of this opinion. It is clear that the board of selectmen had planned to acquire the property and that it had contemplated that, if "other legal means" of acquiring it were unavailable, legislative approval from either the planning and zoning commission or the representative town meeting would be required to condemn the property. See *Santini* v. *Connecticut Hazardous Waste Management Service*, 251 Conn. 121, 139, 739 A.2d 680 (1999), cert. denied, 530 U.S. 1225, 120 S. Ct. 2238, 147 L. Ed. 2d 266 (2000) ("[m]ere planning by a government body in anticipation of the taking of land for public use and preliminary steps taken to accomplish this without the statutory filing of condemnation proceedings and without physical taking is not actionable by the [property] owner" [internal quotation marks omitted]).

Thereafter, however, the town formally disavowed any intention to condemn the property. Therefore, the relief sought—permission to conduct environmental testing in connection with a decision to condemn the property—properly can no longer be obtained. In other words, *even if* the town is correct that § 48-13 authorizes an entity to which a state has delegated the power of eminent domain to access property prior to any *formal* vote to condemn, for purposes of "inspection, survey, borings and other tests," the referendum outcome has determined that the ultimate condemnation has lost its viability. The town's argument that the referendum outcome does not preclude it from revisiting the issue simply means that if and when the town does revisit the issue, there will be a case in controversy for our

consideration at that time.[18] That argument does not address the court's inability to grant relief.

The appeal is dismissed.

In this opinion the other justices concurred.

---

[18] The town's argument, in essence, demonstrates why the issue on appeal is *not* capable of repetition yet evading review. See *Loisel* v. *Rowe*, 233 Conn. 370, 382–83, 660 A.2d 323 (1995).

