ELIZABETH O. MILLER, EXECUTRIX (ESTATE OF FRANK L. MILLER III) *v.* TOWN OF WESTPORT
(SC 16953)

Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

---

208

Argued November 26, 2003—officially released March 16, 2004

*Robert A. Fuller*, for the appellant (plaintiff).

*Mark J. Kovack*, for the appellee (defendant).

*Opinion*

KATZ, J. The plaintiff, Elizabeth O. Miller, individually and as executrix of the estate of Frank L. Miller III, her deceased husband, appeals from the judgment of the trial court rendered for the defendant, the town of Westport, in the plaintiff's action to recover damages for the inverse condemnation of certain real property owned by the decedent. On appeal,[1] the plaintiff claims that the trial court improperly determined that the withdrawal of the plaintiff's administrative appeal from the denial by the Westport zoning board of appeals (board) of a zoning variance for that same property precluded her inverse condemnation[2] action under the takings clauses of the fifth amendment to the United States constitution[3] and article first, § 11, of the constitution

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] "[A] regulatory taking—also known as inverse condemnation—occurs when the purpose of government regulation and its economic effect on the property owner render the regulation substantially equivalent to an eminent domain proceeding and, therefore, require the government to pay compensation to the property owner. *Southview Associates, Ltd.* v. *Bongartz*, 980 F.2d 84, 93 n.3 (2d Cir. 1992), cert. denied, 507 U.S. 987, 113 S. Ct. 1586, 123 L. Ed. 2d 153 (1993); see *First English Evangelical Lutheran Church* v. *Los Angeles*, 482 U.S. 304, 315, 107 S. Ct. 2378, 96 L. Ed. 2d 250 (1987) (landowner entitled to bring action in inverse condemnation as result of self-executing character of takings clause). . . . *Cohen* v. *Hartford*, 244 Conn. 206, 220, 710 A.2d 746 (1998)." (Internal quotation marks omitted.) *Cumberland Farms, Inc.* v. *Groton*, 262 Conn. 45, 47 n.2, 808 A.2d 1107 (2002).

[3] The fifth amendment to the United States constitution provides in relevant part that "private property [shall not] be taken for public use, without just compensation." The takings clause of the fifth amendment is applicable to the states through the due process clause of the fourteenth amendment.

of Connecticut.[4] The plaintiff also claims that the sale of the property, during the pendency of the trial court's decision in this matter, did not preclude her claim for damages for a temporary taking of the property. In response, the defendant raises several alternate grounds for affirmance. We agree with the plaintiff and, accordingly, we reverse the judgment of the trial court.

The following facts are relevant to this appeal. The plaintiff brought this action against the defendant for the inverse condemnation of certain of the decedent's real property, an undeveloped one acre lot that has existed since 1942. The lot is located in an area zoned for residential use and access to the lot is by a twenty-one foot wide right-of-way across an adjacent property (accessway). The parties are in disagreement as to whether the lot conformed to the town zoning regulations at the time of its creation,[5] but, due to revisions of the zoning regulations in later years, the lot currently does not comply in three respects: (1) it does not meet the lot area and shape requirements, which mandate that the lot accommodate a 150 foot square as provided in §§ 31-2.1[6] and 12-3[7] of the Westport zoning regula-

See, e.g., *Palazzolo* v. *Rhode Island*, 533 U.S. 606, 617, 121 S. Ct. 2448, 150 L. Ed. 2d 592 (2001); *Darien* v. *Estate of D'Addario*, 258 Conn. 663, 665 n.3, 784 A.2d 337 (2001).

[4] Article first, § 11, of the constitution of Connecticut provides: "The property of no person shall be taken for public use, without just compensation therefor."

[5] The trial court did not make any findings regarding whether the lot conformed to the zoning regulations in existence at the time of the lot's creation.

[6] Section 31-2.1 of the Westport zoning regulations provides: "Lot and Building Requirements.

"Each rear lot shall comply with the lot and building requirements for the applicable Residence District."

[7] Section 12-3 of the Westport zoning regulations provides: "Lot Area and Shape. . . .

"Each lot shall have a minimum area of one (1) acre (43,560 square feet) and shall be of such shape that a square with one hundred fifty (150) feet on each side will fit on the lot."

tions; (2) the twenty-one foot wide accessway serves multiple lots and is not owned by the same title owner as the lot pursuant to §§ 31-1.2[8] and 31-2.2[9] of the Westport zoning regulations; and (3) the length of the accessway exceeds 350 feet in violation of § 31-2.2.1 of the Westport zoning regulations.[10]

In its memorandum of decision finding in favor of the defendant in the inverse condemnation proceeding, the trial court, *Hon. William F. Hickey, Jr.*, judge trial referee, found the following facts and set forth the following procedural history, which are relevant to our resolution of this claim. "The plaintiff [as executrix of the decedent's estate], at the time of [the] inverse condemnation action owned the lot, which was purchased by [the decedent] in 1980 for $1 from Buddy B., Inc. When the [decedent] attempted to sell the lot in 1991, the Westport director of planning and zoning informed the prospective purchaser that the lot did not comply with the zoning regulations because it could not accommodate a 150 foot square shape according

[8] Section 31-1.2 of the Westport zoning regulations provides: "Multiple Lots.

"Two (2), three (3), four (4) or five (5) lots may use the same private street providing that such street has a minimum right-of-way width of thirty (30) feet and connects with or extends from an existing improved public street, private street and/or subdivision road provided that such existing street has an improved travel path at least twenty (20) feet wide and a right-of-way width of forty (40) feet approved by the Planning and Zoning Commission and on file in the Town Clerk's Office."

[9] Section 31-2.2 of the Westport zoning regulations provides: "Access Requirements.

"Each rear lot shall be connected by a strip of land or accessway, in fee simple ownership by the owner of said rear lot, to an existing improved public or private street or a subdivision road approved by the Planning and Zoning Commission and on file with the Town Clerk."

[10] Section 31-2.2.1 of the Westport zoning regulations provides in relevant part: "The accessway shall not exceed a length of . . .

"(b) 350 feet for Residence AA District . . . ."

Since the time the plaintiff's decedent owned the lot, it has been zoned a residence AA district.

to . . . Westport Zoning Regulations §§ 12-3 and 31-2.1 (the minimum square foot provisions).[11] In 1991, the [decedent] applied for a variance of the minimum square foot provisions. The [board] denied that variance application.[12] . . . On February 22, 1995, the [decedent] applied for a variance of §§ 31-1.2 and 31-2.2 [of the Westport zoning regulations] (the access provisions) to allow the accessway to be used by other lots. The [board] denied that variance application.[13] On November 3, 1998, Richard Montanaro . . . as agent for the plaintiff [in her capacity as executrix of the decedent's estate], applied for a variance of the minimum square foot provisions and access provisions, in order to use the lot for the construction of one single-family residence. The [board] denied that variance application without prejudice [on February 18, 1999].

---

[11] According to an opinion letter issued by the Westport planning and zoning director, the lot also was not in compliance with the right-of-way requirements because more than one lot was being serviced by the accessway.

[12] The board denied the plaintiff's application because it found insufficient hardship and determined that any existent hardship was self-created. *Miller* v. *Zoning Board of Appeals*, 36 Conn. App. 98, 100, 647 A.2d 1050 (1994). The board also found that under § 6-3.2 of the Westport zoning regulations, a provision requiring adjacent nonconforming lots to be considered together if such consideration resulted in a lot that either conformed with zoning regulations or conformed to them in a greater degree, the plaintiff's then nonconforming lot had merged with an adjacent lot once owned by the plaintiff. Id., 100–101. The plaintiff appealed that decision to the Superior Court, which upheld the board's findings. Id., 100.

On appeal, the Appellate Court held that the merger provision did not apply to the lot even though there had been common ownership with an adjacent lot at some time in the property's history because, even if the lots were considered together, the minimum square foot regulation still was not met. Id., 102–105. Because the Appellate Court's finding that the two properties had not merged eroded the foundation for the trial court's hardship determination, the Appellate Court reversed the judgment and remanded the case to the board to determine whether the lot in question should be granted a variance. Id., 105–106.

[13] On June 27, 1995, the board denied the application for a variance because no hardship was proven and because the application contained insufficient information.

On March 12, 1999, the plaintiff, along with Montanaro . . . appealed the denial of the preceding variance applications (the administrative appeal).[14] . . . On November 18, 1999, the plaintiff brought this inverse condemnation action.[15] On April 23, 2001, the court, *Mintz, J.*, granted the plaintiff's motion to consolidate the administrative appeal with [the] inverse condemnation action. . . . [The] consolidated case was tried to conclusion before [Judge Hickey] on May 10, 11 and 17, 2001.

"On November 20, 2001, the defendant's motion to [open] the proceedings to present new evidence was granted by [Judge Hickey] . . . . On December 3, 2001, a hearing was held to present new evidence and a deed establishing that on November 7, 2001, the lot was sold by the plaintiff for $475,000.[16] . . . On this same day, [Judge Hickey] granted Montanaro and the plaintiff's motion to withdraw the administrative appeal." (Citations omitted.)

In his April 15, 2002 memorandum of decision, Judge Hickey determined that the plaintiff's action could not be based on a permanent taking of the lot because, after the lot had been sold, she no longer possessed any legal interest in it.[17] Additionally, the trial court

[14] Even though the plaintiff and Montanaro appealed the board's denial of the variance, they also resubmitted their variance application in a further attempt to seek a variance. After a public hearing, the board denied that variance on April 27, 1999.

[15] On January 2, 2001, the trial court, *Mintz, J.*, granted the plaintiff's motion to add herself in her individual capacity as a party plaintiff.

[16] The record reveals that, on November 7, 2001, after the case was tried but before the trial court rendered its judgment, Montanaro exercised an option that he had held to buy the lot from the plaintiff for $100,000. As part of that agreement, Montanaro had agreed to pay all costs for obtaining the permits necessary to develop the property, including legal fees. Immediately after exercising the option to purchase, Montanaro sold the lot to abutting landowners for $475,000. See footnote 20 of this opinion.

[17] On appeal, the plaintiff does not dispute that the sale of the lot eliminated her claim for damages for a permanent taking.

determined that the plaintiff's action could not be based on a temporary taking of the lot because the validity of the board's denial of the variance applications was never decided due to the withdrawal of the administrative appeal. The trial court subsequently rendered judgment for the defendant. This appeal followed.

Before we address the merits of the plaintiff's claims, we set forth the applicable standard of review. "[T]he scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Leonard* v. *Commissioner of Revenue Services*, 264 Conn. 286, 294, 823 A.2d 1184 (2003). With these standards in mind, we turn to the plaintiff's claims.

I

The plaintiff contends that, once the lot was sold, her inverse condemnation claim was transformed into a claim for damages for a temporary taking. See *First English Evangelical Lutheran Church* v. *Los Angeles County*, 482 U.S. 304, 318–19, 107 S. Ct. 2378, 96 L. Ed. 2d 250 (1987) (when municipal land use regulations result in taking, owner entitled to temporary takings damages for period that use of land was denied until taking ends). The plaintiff asserts, however, that, under our decision in *Cumberland Farms, Inc.* v. *Groton*, 247 Conn. 196, 719 A.2d 465 (1998) (*Cumberland Farms I*), the trial court improperly failed to address the merits of her temporary taking claim, and instead, improperly based its decision on her withdrawal of her administrative appeal from the board's denial of the variance appli-

cations.[18] Although the defendant does not expressly disagree that the withdrawal of the administrative appeal did not preclude the plaintiff from making an inverse condemnation claim, the defendant argues that the trial court actually did decide the merits of the plaintiff's claim and specifically found that there was no temporary taking of the lot.

In its memorandum of decision, the trial court ruled: "[T]he plaintiff's action cannot be supported by a temporary taking of the lot for the following reason. . . . Temporary takings are defined by the United States Supreme Court as those regulatory takings which are ultimately invalidated by the courts. . . . Here . . . the plaintiff withdrew [the] administrative appeal. Therefore, the court never decided the administrative appeal in the plaintiff's favor nor did it invalidate the [board's] denial of the plaintiff's variances in the administrative appeal. Consequently, the plaintiff's action cannot be based on the temporary taking of the lot." (Citations omitted; internal quotation marks omitted.) It is clear to us, based upon this ruling, that the trial court concluded that there was no temporary taking of the lot because the board's denial of the variance was never "invalidated," as a result of the plaintiff having withdrawn her administrative appeal, and not because the plaintiff had failed to establish a valid temporary taking claim. We therefore agree with the plaintiff that the trial court never reached the issue of whether there was a temporary taking under these circumstances.

The plaintiff argues that the trial court's ruling was improper because, when a zoning board of appeals

[18] The plaintiff also argues that the sale of the lot did not preclude her claim for damages based on a temporary taking from the date of the denial of the variance to the date the property was sold. Insofar as the court never ruled expressly that the sale of the property was fatal to her temporary taking claim, we view the plaintiff's argument as anticipating the defendant's alternate grounds for affirmance, and therefore address it in part II of this opinion.

denies a variance from the zoning regulations, the property owner can still maintain an inverse condemnation action without an administrative appeal from the denial of the variance. As the plaintiff submits, our resolution of this issue is controlled by our decision in *Cumberland Farms I*, supra, 247 Conn. 196. In that case, we concluded that the denial of a variance by a zoning board of appeals is considered a final decision by an initial decision maker, which is all that is required to establish finality in order to bring a takings claim, and that once the zoning board of appeals makes its decision, the regulatory activity is final for purposes of an inverse condemnation claim. Id., 211–13. Therefore, an administrative appeal from the decision of the zoning board of appeals under General Statutes § 8-8 is not necessary in order to bring an inverse condemnation action. Id., 211. "The statutory appeals process . . . is . . . precisely the type of procedure that a [taking] claimant . . . need not pursue as a prerequisite to filing his suit." (Internal quotation marks omitted.) Id., 207, quoting *Port Clinton Associates* v. *Board of Selectman*, 217 Conn. 588, 607, 587 A.2d 126, cert. denied, 502 U.S. 814, 112 S. Ct. 64, 116 L. Ed. 2d 39 (1991).

The distinction between an administrative appeal to the Superior Court from an adverse decision of a zoning board of appeals and an inverse condemnation action explains why a property owner need not undertake an administrative appeal in order to bring a takings claim. An administrative appeal "serves the remedial purpose of reviewing the propriety of [a zoning board of appeals'] decision . . . [and] cannot provide a monetary remedy to the plaintiff. By contrast, in an inverse condemnation action, a plaintiff alleges that a regulatory action constitutes a taking for constitutional purposes and seeks compensation for the alleged taking. An inverse condemnation action does not concern itself with the propriety of the [zoning board of appeals']

action. The only inquiry is whether a taking has, in fact, occurred. If the [zoning board of appeals'] action resulted in a taking, the inverse condemnation action will determine the amount of compensation due. Although action by the Superior Court favorable to the plaintiff in the plaintiff's administrative appeal might eliminate the plaintiff's claim of compensation for a complete taking, the plaintiff might nonetheless be entitled to compensation for the temporary taking that wrongly denied the plaintiff's use of its property while the appeal was pending." (Citations omitted.) *Cumberland Farms I*, supra, 247 Conn. 207–208.

We concluded in *Cumberland Farms I* that the plaintiff property owner's inverse condemnation claim was not precluded by the existence of a pending administrative appeal from the denial of the plaintiff's application for a zoning variance and we remanded the case for further proceedings. Id., 217–18. Subsequently, we held in *Cumberland Farms, Inc.* v. *Groton*, 262 Conn. 45, 57, 808 A.2d 1107 (2002) (*Cumberland Farms II*), that the doctrine of collateral estoppel did not prevent the plaintiff property owner from litigating, in an inverse condemnation claim, all factual issues relevant to such a claim regardless of whether those issues had been decided by a zoning board of appeals in ruling on the plaintiff's variance applications. We concluded that the plaintiff was entitled to de novo review of the factual issues underlying its inverse condemnation claim regardless of the prior resolution of any of those factual issues by the zoning board of appeals, and furthermore, that the decision of the trial court upholding the zoning board of appeals' decision in the plaintiff's related administrative appeal did not preclude the plaintiff from litigating any factual issues in its inverse condemnation action. Id., 69. Simply put, our decisions in *Cumberland Farms I* and *Cumberland Farms II* clearly recognize that a plaintiff is not required to appeal a decision of

the zoning board of appeals denying a variance in order to bring an inverse condemnation claim, and also that the plaintiff is entitled to de novo review of the factual issues underlying its inverse condemnation claim regardless of the prior determinations of those issues by the zoning board of appeals.

We conclude that in the present case, the plaintiff, as owner of the lot, and Montanaro, as the holder of an option to purchase the property, had the right to withdraw the administrative appeal from the board's denial of the variance applications, and that the withdrawal did not preclude the plaintiff from pursuing her inverse condemnation claim. In fact, once the plaintiff sold the lot, she no longer had any right to pursue the variance appeal. "[I]t is well settled that variances run with the land and are not personal in nature." *Reid* v. *Zoning Board of Appeals*, 235 Conn. 850, 859, 670 A.2d 1271 (1996). The trial court improperly ruled that the plaintiff did not have a temporary taking claim because a "court never decided the administrative appeal in the plaintiff's favor nor did it invalidate the [board's] denial of the plaintiff's variances in the administrative appeal," as it was the trial court's place to make such a determination itself.

## II

The defendant submits four alternate grounds for affirmance.[19] Because three of the grounds pertain

[19] The defendant presents four alternate grounds upon which the judgment of the trial court may be affirmed: (1) that there was no regulatory taking of the lot because the plaintiff was able to sell the lot, without receiving a zoning variance, for $475,000, a sum greater than the valuation given by the plaintiff's expert that was based on the assumption that the lot could be developed; (2) that there was no regulatory taking of the lot because the plaintiff successfully sold it to a contract purchaser where the contract provided for a sale *if* a variance was issued allowing for the lot's development and no such variance was issued; (3) that the defendant did not permanently deprive the lot of all value because the plaintiff was able to sell the lot for the value she attributed to it as a developable lot without first obtaining a zoning variance; and (4) that the plaintiff lacked a reasonable investment-

exclusively to the sale of the lot, however, we have combined them for purposes of our review. In essence, the defendant argues that the trial court properly concluded that the plaintiff had failed to prove a temporary taking, as a matter of law, because: (1) the plaintiff's sale of the lot, and the price she received for it, demonstrated that there was no taking; and (2) the plaintiff lacked a reasonable expectation of developing the lot. The plaintiff responds that the sale of the lot, in general, did not preclude her claim for damages based on a temporary taking from the date of the denial of the variance to the date of the sale, and that the sale, which occurred while the trial court's decision in this case was pending, merely transformed what was, originally, a permanent takings claim, into a temporary takings claim. Specifically, the plaintiff argues that the trial court did not decide the issues of whether her claim was precluded based on the amount she received from the sale of the lot, or whether she lacked a reasonable expectation of developing the lot, and therefore, we may not review such claims.

As the defendant concedes in its brief to this court, the trial court made only a limited number of findings in this case. For example, the court did not determine: (1) the history of the lot and its adjoining accessway; (2) the effect of the zoning regulations upon the plaintiff's lot, either currently, or throughout the property's history; (3) whether the zoning regulations precluded all use of the lot; (4) whether the plaintiff and the decedent had a reasonable expectation of development of the lot; or (5) whether the restrictions imposed by the zoning regulations ultimately amounted to an inverse condemnation of the lot.[20] Moreover, we note that the

backed expectation of developing the lot as a matter of law because the property was not a legal nonconforming lot at the time title was acquired.

[20] We note that of the few facts the trial court expressly found, one is clearly erroneous. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the

parties dispute these issues, as well as several more specific factual matters, including, but not limited to: whether the lot originally conformed to the zoning regulations in effect at the time the lot was created; whether the plaintiff's decedent had notice that the lot did not conform to applicable zoning regulations prior to 1991; whether other similarly nonconforming adjacent lots were granted variances; whether various offers to purchase the lot were proffered or accepted; and what damages, if any, the plaintiff was entitled to recover. The parties, in an attempt to have the factual record supplemented, filed detailed motions for articulation requesting that the trial court make various specific findings regarding the history of the lot, the effect of the zoning regulations on the lot and the merits of the plaintiff's claim for inverse condemnation. The trial court responded merely by repeating that, "because the issue of whether there was a temporary taking was left undecided after [the plaintiff] withdrew her administrative appeal, her inverse condemnation claim could not be based on a temporary taking."[21] Therefore, because

definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Lipshie* v. *George M. Taylor & Son, Inc.*, 265 Conn. 173, 182, 828 A.2d 110 (2003). The trial court found that "the lot was sold by the plaintiff for $475,000." At the time of the trial court's judgment, Montanaro was no longer a plaintiff in the action because the administrative appeal of the board's denial of the variance applications had been withdrawn and, therefore, only the plaintiff in her individual and representative capacities could have been "the plaintiff" in the trial court's ruling. Our review of the record, however, reveals that Montanaro purchased the lot for $100,000 from the plaintiff, and that it was *Montanaro*, not the plaintiff, who subsequently sold the lot to a third party for $475,000. See footnote 16 of this opinion. Therefore, the trial court's finding that "the lot was sold by the plaintiff for $475,000" is clearly erroneous.

[21] We note that the plaintiff did not file a motion for review with this court. Although such an action is recommended, following the trial court's inadequate response to the motions for articulation—in which the court reiterated its finding that because the temporary taking issue was left undecided after the plaintiff had withdrawn her administrative appeal, her inverse condemnation claim could not be based on a temporary taking—we cannot say that the plaintiff improperly depended on the trial court's reliance on that incorrect theory. See *Franc* v. *Bethel Holding Co.*, 73 Conn. App. 114,

the record before us contains insufficient facts, we find ourselves unable to review the defendant's alternate grounds for affirmance. See *Tower Business Park Associates No. 1 Ltd. Partnership* v. *Water Pollution Control Authority*, 213 Conn. 112, 125, 566 A.2d 696 (1989). "At this stage of the proceedings, we are incapable of making [the] necessary determinations. In general, '[i]t is the function of the trial court, not this court, to find facts.' *State* v. *Lafferty*, 189 Conn. 360, 363, 456 A.2d 272 (1983). Imposing a fact-finding function on this court, therefore, would be contrary to generally established law. Indeed, it would be inconsistent with the entire process of trial fact-finding for an appellate court to do so." *State* v. *Tate*, 256 Conn. 262, 287–88 n.17, 773 A.2d 308 (2001). Accordingly, we do not recite the arguments and case law relied upon by the defendant to advance its claims that the plaintiff's sale of the lot or the lack of a reasonable expectation of development of the lot demonstrates that there was no taking; nor do we recite the arguments advanced by the plaintiff in response to the defendant's claims. We leave these determinations to the trier of fact. See *State* v. *Nowell*, 262 Conn. 686, 695, 817 A.2d 76 (2003).

The judgment of the trial court is reversed and the case is remanded to that court for a determination on the merits of the issues raised by the plaintiff in her inverse condemnation action.

In this opinion the other justices concurred.

---

146 n.1, 807 A.2d 519 (*Schaller, J.*, dissenting), cert. granted on other grounds, 262 Conn. 923, 812 A.2d 864 (2002) (appeal withdrawn October 21, 2003).