******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ZARELLA, J., with whom EVELEIGH and ROB-INSON, Js., join, dissenting. The majority concludes that the procedural default rule does not apply to challenges to kidnapping instructions in criminal actions that proceeded to final judgment before we changed our interpretation of the kidnapping statutes in *State v. Salamon*, 287 Conn. 509, 949 A.2d 1092 (2008), but, rather, should be replaced by a standard that provides retroactive relief in the form of a new trial for all collateral attacks on such judgments if the reviewing court determines that the omission of a *Salamon* instruction was not harmless beyond a reasonable doubt. I respectfully disagree. Neither party has questioned on appeal to this court whether the procedural default rule should be replaced by a different standard. Accordingly, the issue has not been properly raised or briefed. In addition, the majority relies on reasoning in *Luurtsema* v. *Commissioner of Correction*, 299 Conn. 740, 12 A.3d 817 (2011), that was supported by only a plurality of this court and did not consider procedural default as a potential bar to habeas claims based on the omission of a *Salamon* instruction. As a consequence, *Luurtsema* does not compel the conclusion that the procedural default rule should not be applied in these cases, as the majority claims. Furthermore, the majority's decision to abandon the procedural default rule and adopt a different standard injects unnecessary incongruity into our law and undermines legitimate and settled expectations regarding the ability of petitioners to raise new claims that have not been raised at trial or in the Appellate Court. Finally, insofar as I deem the procedural default rule to be the proper legal standard for habeas review of *Salamon* claims, the petitioner, Walter Hinds, did not establish good cause for failing to seek a *Salamon* instruction at trial or for failing to raise the issue of its omission on direct appeal. For the reasons discussed in Justice Eveleigh's dissenting opinion, the petitioner also did not establish that he suffered actual prejudice under the facts and circumstances of this case. I would thus conclude that the Appellate Court incorrectly determined that the petitioner satisfied the two-pronged test of good cause and actual prejudice required to overcome procedural default.

I

I begin with the majority's sua sponte decision to abandon the procedural default rule on the basis of this court's reasoning in *Luurtsema* and to replace it with an entirely new standard that would require a reviewing court to determine whether the omission of a *Salamon* instruction was not harmless beyond a reasonable doubt. As previously noted, the parties have not raised the issue of whether the rule should be replaced in

their separate appeals to this court. Both parties instead address the merits of the Appellate Court's conclusion that the petitioner established the good cause and actual prejudice required under the rule to allow habeas review of his jury instruction claim. In fact, the respondent, the Commissioner of Correction, citing *Johnson* v. *Commissioner of Correction*, 218 Conn. 403, 409, 589 A.2d 1214 (1991) (adopting cause and prejudice as "the appropriate standard for reviewability in a habeas corpus proceeding of constitutional claims not adequately preserved at trial because of procedural default"), specifically emphasizes in his brief that he is not challenging the Appellate Court's consideration of the procedural default rule in its review of the petitioner's claim, but only the manner in which the court applied the rule. The majority also acknowledges that the respondent is contending only that "the Appellate Court did not correctly apply the legal standard for assessing cause and prejudice to overcome procedural default." Although the petitioner purportedly makes a brief, secondary argument that procedural default is not a bar to habeas review pursuant to the reasoning in *Luurtsema*, even *he* never goes so far as to suggest that the procedural default rule should be replaced by an entirely different standard.[1] It is thus improper for the majority to consider the issue in the present case without the input of the parties who appealed to this court.[2] See, e.g., *Sabrowski* v. *Sabrowski*, 282 Conn. 556, 560, 923 A.2d 686 (2007) (reviewing court limited to resolving claims raised by parties); *Ghant* v. *Commissioner of Correction*, 255 Conn. 1, 17, 761 A.2d 740 (2000) ("[i]t is not appropriate to engage in a level of review that is not requested" [internal quotation marks omitted]).

## II

Notwithstanding this significant threshold problem, even if the parties had raised and briefed the issue, I do not agree with the majority's reliance on the reasoning in *Luurtsema* to abandon application of the procedural default rule when petitioners in habeas cases bring *Salamon* claims. The majority concludes that *Luurtsema* "effectively resolved the procedural default question such that the doctrine does not apply to [the petitioner's] *Salamon* claim." In the majority's view, *Luurtsema* determined, as a matter of state common law, that policy considerations weigh in favor of retroactive application of *Salamon* to collateral attacks on judgments rendered final before *Salamon* was decided; see *Luurtsema* v. *Commissioner of Correction*, supra, 299 Conn. 766–67 (plurality opinion). Accordingly, application of the procedural default rule to protect the finality of judgments would be inconsistent with the reasoning in *Luurtsema* that "the interests of finality must give way to the demands of liberty and a proper respect for the intent of the legislative branch." Id., 766 (plurality opinion). In further support of this conclusion, the majority adds that *Luurtsema* failed to explic-

itly consider procedural default as a limitation on its decision. In my view, however, the majority misunderstands *Luurtsema* and its potential effect, if any, on the disposition of *Salamon* claims in habeas proceedings.

I begin by noting that the analysis in *Luurtsema* on which the majority relies was endorsed by a plurality of three panel members, with one other member of the panel concurring only in the judgment and two other members concurring only in the result. As a consequence, the plurality's analysis in *Luurtsema* does not govern in the present case because it does not reflect the decision of a majority of the panel members.

To better understand the precedential value of *Luurtsema*, I briefly review the opinions in that case. Initially, the habeas court reserved two questions for resolution by this court: "(1) whether [this court's decisions in] *Salamon* and [*State* v. *Sanseverino*, 287 Conn. 608, 949 A.2d 1156 (2008), overruled in part by *State* v. *DeJesus*, 288 Conn. 418, 953 A.2d 45 (2008), and modified in part after reconsideration en banc by *State* v. *Sanseverino*, 291 Conn. 574, 969 A.2d 710 (2009)] apply retroactively in habeas corpus proceedings; and (2) whether those cases apply in the petitioner's case in particular." *Luurtsema* v. *Commissioner of Correction*, supra, 299 Conn. 743 (plurality opinion). All six members of the panel in *Luurtsema* agreed that both questions should be answered in the affirmative. Different panel members, however, relied on different rationales in reaching that conclusion.

With respect to the first question, a plurality of three justices opted not to characterize the *Salamon* decision as a clarification of the kidnapping statute that should be given full retroactive effect under a federal due process analysis. Id., 751. The plurality instead chose to decide the retroactivity question under state common law, and, therefore, adopted "a general presumption in favor of full retroactivity for judicial decisions that narrow the scope of liability of a criminal statute. That presumption, however, would not necessarily require that relief be granted in cases where continued incarceration would not represent a gross miscarriage of justice, such as where it is clear that the legislature did intend to criminalize the conduct at issue, if perhaps not under the precise label charged. In situations where the criminal justice system has relied on a prior interpretation of the law so that providing retroactive relief would give the petitioner an undeserved windfall, the traditional rationales underlying the writ of habeas corpus [also] may not favor full retroactivity." Id., 764. The plurality emphasized that, "in the *Salamon* context in particular, any exceptions to the general presumption in favor of full retroactivity are likely to be few and far between." Id. The plurality then rejected each of the state's five policy arguments for adopting a per se rule against retroactive relief or for denying relief to the petitioner,

Peter Luurtsema. Id., 765–72. With respect to the second reserved question, the plurality determined that this court's interpretation of the kidnapping statutes in *Salamon* should apply retroactively to Luurtsema because his case did not fall within any exception to the rule discussed therein and there appeared to be no evidence that Luurtsema intended to restrain the victim more than was necessary to conduct the underlying sexual assault. Id., 773–74.

In her concurrence, which no other justice joined, Justice Katz concluded, unlike the plurality, that the *Salamon* decision represented a clarification of the kidnapping statute that should be given full retroactive effect under federal due process law. See id., 775. Although she agreed with the plurality's explanation as to why the court should reject the state's general policy arguments for adopting a per se rule against retroactivity and the state's arguments against affording relief to Luurtsema; id., 791; she disagreed with the plurality's decision to permit exceptions to the rule of retroactivity in order to, as the plurality explained, "guard against certain fringe cases . . . ." Id. She explained that the plurality had crafted "a novel rule of retroactivity under our common-law authority," and that, "even if it were necessary to decide [the] case under our common-law authority, we should adopt a per se rule that decisions narrowing the interpretation of criminal statutes apply retroactively." Id., 775. Justice Katz further criticized the plurality's approach as "unclear" and discussed various hypothetical situations in which questions might arise regarding the retroactivity of decisions narrowing the interpretation of criminal statutes. Id., 793. Justice Katz thus concurred only in the judgment. Id., 797.

In Justice Palmer's separate concurrence, he expressed "agree[ment] with much of the plurality opinion and concur[red] in the result . . . ." Id. He also explained, however, that he did not believe the court should decide the question of whether to adopt a per se rule in favor of full retroactivity under our common law, observing that the court "need not resolve the issue to decide the . . . case because, as the plurality also conclude[d], [Luurtsema was] entitled to full retroactivity regardless of whether we adopt[ed] such a rule." Id.

Justice McLachlan also issued a separate opinion in which he "reluctantly" concurred in the result. Id., 798. He explained that he would have "prefer[red] to follow our long-standing principle of finality of judgments and would deny [Luurtsema] the relief that he [sought], [but he was] compelled to follow the precedent established by *Salamon* . . . ." Id., 799.

This court has recognized that, "[w]hen a fragmented [c]ourt decides a case and no single rationale explaining the result enjoys the assent of [a majority of the] [j]ustices, the holding of the [c]ourt may be viewed as the position taken by those [m]embers who concurred in

the judgments on the narrowest grounds . . . ." (Internal quotation marks omitted.) *State* v. *Ross*, 272 Conn. 577, 604 n.13, 863 A.2d 654 (2005), quoting *Marks* v. *United States*, 430 U.S. 188, 193, 97 S. Ct. 990, 51 L. Ed. 2d 260 (1977). In *Luurtsema*, Justice Katz was the only concurring panel member who explicitly adopted any part of the plurality's reasoning. As previously discussed, she agreed with the plurality's rationale for rejecting the state's general arguments for a per se rule against retroactivity; *Luurtsema* v. *Commissioner of Correction*, supra, 299 Conn. 791; but she did not agree with the plurality's "novel rule of retroactivity under our common-law authority . . . ." Id., 775. She instead argued for a per se rule in favor of full retroactivity under a federal due process analysis. See id., 791. Justice Palmer agreed with "much of the plurality opinion"; id., 797; but did not distinguish those parts with which he agreed from those with which he disagreed. See id., 797–98. Justice McLachlan did not agree with any part of the plurality's reasoning but merely stated that he felt "compelled to follow the precedent established by *Salamon* . . . ." Id., 799. Accordingly, it does not appear that any of the three concurring justices explicitly agreed with the plurality's decision to adopt a "general presumption in favor of full retroactivity" or with its description of the scope of, or exceptions to, this general presumption. Id., 764. I thus believe that the majority's assertion that the plurality's reasoning in *Luurtsema* "*compels the conclusion* that challenges to kidnapping instructions in criminal proceedings rendered final before *Salamon* are not subject to the procedural default rule"; (emphasis added); is legally unsupportable.[3] The only parts of the plurality opinion that appear to have any precedential value are the court's affirmative answers to the reserved questions of whether *Salamon* and *Sanseverino* apply retroactively in habeas corpus proceedings and to Luurtsema, in particular, because those are the narrowest grounds on which a majority of the panel clearly agreed.

In addition to the fact that the plurality's reasoning in *Luurtsema* has no precedential value, procedural default was not addressed by any of the panel members, most likely because Luurtsema's counsel had the foresight to ask the trial court for a *Salamon*-type instruction eight years before *Salamon* was decided. Id., 774 (plurality opinion). Accordingly, in *Luurtsema*, the respondent did not raise a procedural default defense, and that case provides no guidance as to the applicability of the procedural default rule when a petitioner who has not requested a *Salamon* instruction at trial or raised the issue on direct appeal makes a *Salamon* claim in a subsequent habeas proceeding.

Moreover, I am not the first to note the lack of guidance in *Luurtsema* as to the applicability of procedural default to a *Salamon* claim. In *Smith* v. *Warden*, Superior Court, judicial district of Tolland, Docket No. TSR-

CV-08-4002747-S (September 13, 2011), a habeas case decided only eight months following the publication of *Luurtsema,* the court observed that the issue of procedural default was "absent and therefore never discussed by the Supreme Court" in *Luurtsema* and that this court "never had occasion in [*Luurtsema*] to consider the effect of procedural default with respect to the retroactive application of *Salamon.*" The court in *Smith* thus considered the respondent's affirmative defense of procedural default in that case and determined that the petitioner, Lawrence R. Smith, had established the good cause and actual prejudice required to overcome the default. Id. Thereafter, the respondent routinely raised the affirmative defense of procedural default when habeas petitioners sought a new trial because of the trial court's omission of a *Salamon* instruction, and petitioners never challenged the propriety of the defense, opting instead to argue that their claims had not been barred by the procedural default rule. See *Hinds* v. *Warden,* Superior Court, judicial district of Tolland, Docket No. TSR-CV-09-4003234-S (August 21, 2012), aff'd sub nom. *Hinds* v. *Commissioner of Correction,* 151 Conn. App. 837, 97 A.3d 986, cert. granted, 314 Conn. 928, 928–29, 101 A.3d 273 (2014); *Epps* v. *Warden,* Superior Court, judicial district of Tolland, Docket No. TSR-CV-06-4001167-S (November 7, 2012), aff'd sub nom. *Epps* v. *Commissioner of Correction,* 153 Conn. App. 729, 104 A.3d 760 (2014); *Barile* v. *Warden,* Superior Court, judicial district of Tolland, Docket No. TSR-CV-10-4003798-S (August 13, 2013); *Farmer* v. *Warden,* Superior Court, judicial district of Tolland, Docket No. TSR-CV-12-4004510-S (May 8, 2014); *Wilcox* v. *Warden,* Superior Court, judicial district of Tolland, Docket No. TSR-CV-11-4004205-S (September 17, 2014), rev'd sub nom. *Wilcox* v. *Commissioner of Correction,* 162 Conn. App. 730, 129 A.3d 796 (2016); *Davis* v. *Warden,* Superior Court, judicial district of Tolland, Docket No. TSR-CV-11-4004289-S (October 6, 2014); *Robles* v. *Warden,* Superior Court, judicial district of Tolland, Docket No. TSR-CV-12-4004528-S (December 16, 2014); *Nogueira* v. *Warden,* Superior Court, judicial district of Tolland, Docket No. TSR-CV-14-4006033-S (June 10, 2015). Indeed, in one recent case in which the habeas court noted that the respondent had not raised procedural default as an affirmative defense, the court suggested that such a defense would have been appropriate. See *Betancourt* v. *Warden,* Superior Court, judicial district of Tolland, Docket No. TSR-CV-12-4004762-S (January 12, 2016) ("[The] court is of the opinion that this claim is susceptible to the special defense of procedural default if raised by the respondent. However, this was not the case."). Similarly, when three of the foregoing habeas cases, including the present case, were appealed to the Appellate Court, that court considered the habeas court's ruling with respect to the respondent's procedural default defense in each case without hesitation. See

*Wilcox* v. *Commissioner of Correction*, supra, 739, 746, 749–50 (reversing judgment of habeas court, which had concluded that petitioner's claim was not procedurally defaulted, on ground that petitioner had failed to meet heavy burden of demonstrating actual prejudice due to absence of *Salamon* instruction); *Epps* v. *Commissioner of Correction*, supra, 736, 738, 742 (affirming judgment of habeas court, which had concluded that petitioner's claim was not procedurally defaulted, on ground that petitioner had established good cause and actual prejudice due to absence of *Salamon* instruction); *Hinds* v. *Commissioner of Correction*, supra, 855–60 (affirming judgment of habeas court granting habeas petition in part and concluding that petitioner had demonstrated good cause and actual prejudice due to absence of *Salamon* instruction). It thus has been universally understood by multiple petitioners, the respondent, every habeas court that has considered the issue, and the Appellate Court following *Luurtsema* that procedural default is an appropriate defense to a *Salamon* claim.

### III

Because procedural default was never addressed in *Luurtsema*, it was left for future courts to decide how the retroactivity decision should be applied when habeas petitioners seek new trials because of the omission of a *Salamon* instruction. I freely acknowledge at the outset that, in my view, this court's decisions in *Salamon* and *Sanseverino* should not be applied retroactively. Thus, if I had been a panel member in *Luurtsema*, I would have answered the first reserved question in the negative and the second reserved question by limiting the application of *Salamon* and *Sanseverino* to the petitioner in *Luurtsema*. In fact, I strongly favor reconsideration of the decision in *Luurtsema* for the five policy reasons rejected by the plurality and Justice Katz in their respective opinions. These reasons include "(1) the fact that law enforcement relied on the old interpretation of the kidnapping statutes while trying the petitioner; (2) the fact that the retroactive application of *Salamon* has no deterrent value or remedial purpose; (3) the fear that our courts will be 'flooded' with habeas petitions from other inmates convicted under [the kidnapping statutes]; (4) the difficulty of retrying such cases where significant time has elapsed since conviction; and . . . (5) the concern that victims will be retraumatized by again having to testify and endure another round of judicial proceedings." *Luurtsema* v. *Commissioner of Correction*, supra, 299 Conn. 765 (plurality opinion). Of particular concern to me is that retroactive application of *Salamon* and *Sanseverino* will have no deterrent value, will make the retrial of cases that originally were tried up to three decades ago difficult to replicate, and may force victims who have recovered in part from the original crime and the first trial to reexperience their former pain and suf-

fering.

Absent reconsideration by this court of the retroactivity issue, I would limit retroactive application of *Salamon* and *Sanseverino* to cases tried before *Luurtsema* in which a defendant, unlike the petitioner in the present case, either sought a *Salamon*-type instruction at trial, as counsel did in Luurtsema's case; *Luurtsema* v. *Commissioner of Correction*, supra, 299 Conn. 774 (plurality opinion); or raised a claim on direct appeal relating to the omission of such an instruction, as the defendant did in *State* v. *Hampton*, 293 Conn. 435, 455, 978 A.2d 1089 (2009), and Luurtsema also did in his direct appeal. See *State* v. *Luurtsema*, 262 Conn. 179, 200, 811 A.2d 223 (2002). I take this position because a criminal defendant who is convicted under the law in effect at the time he committed the crime cannot be said to suffer any harm from this limited application of *Salamon* and *Sanseverino*, having been put on notice of the consequences of his conduct. To the extent petitioners raise *Salamon* claims for the first time in habeas proceedings, however, I believe it is absolutely necessary to apply the procedural default rule when determining whether these claims are reviewable out of respect for the consistency of our procedural default law and for the principle of the finality of judgments.

In rejecting a per se rule against retroactivity, the court in *Luurtsema* left open several potential options for reviewing such claims, there being no majority in favor of any particular approach. Among these options are (1) a per se rule in favor of full retroactivity, as advocated by Justice Katz; id., 791; (2) a general presumption in favor of full retroactivity subject to a few limited exceptions, as advocated by the plurality; see id., 764; or (3) an approach that allows for the limited retroactivity of *Salamon* and *Sanseverino* under an appropriate standard of review.

The majority in the present case appears to reject the first two options in favor of the third option of limited retroactivity, but under a newly created and simplified standard that requires a reviewing court to consider whether omission of the instruction was "not harmless beyond a reasonable doubt." Like the majority, I also reject the first two options. I nonetheless disagree with the majority's decision to create an entirely new standard because it represents a significant and unjustifiable departure from Connecticut's well established procedural default rule, which is the standard that is generally applied by reviewing courts in these circumstances.

The procedural default rule provides that the petitioner in a habeas proceeding "must demonstrate good cause for his failure to raise a claim at trial or on direct appeal and actual prejudice resulting from the impropriety claimed in the habeas petition." (Emphasis omitted.) *Johnson* v. *Commissioner of Correction*, 285 Conn. 556,

567, 941 A.2d 248 (2008). Thus, to the extent a petitioner does not seek or object to the lack of a *Salamon* instruction at trial or raise the issue on direct appeal, his claim is subject to procedural default unless he is able to demonstrate good cause and actual prejudice for his failure to do so. See, e.g., id. We have stated that "[t]he existence of cause for a procedural default must ordinarily turn on whether the [petitioner] can show that some objective factor external to the defense impeded counsel's efforts to comply with the [s]tate's procedural rule." (Internal quotation marks omitted.) Id., 568. For example, "a showing that the factual or legal basis for a claim was not reasonably available to counsel . . . or . . . some interference by officials . . . would constitute cause under this standard." (Internal quotation marks omitted.) Id. With respect to actual prejudice, a petitioner must show "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." (Emphasis omitted; internal quotation marks omitted.) *Murray* v. *Carrier*, 477 U.S. 478, 494, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986).

Although it may be difficult for habeas petitioners who raise *Salamon* claims to establish the good cause and actual prejudice required to overcome procedural default, it is not impossible. Moreover, application of the procedural default rule when reviewing *Salamon* claims in habeas proceedings is consistent with our traditional respect for the finality of judgments and the purpose and policies underlying the Great Writ. As the state notes, the writ of habeas corpus is intended as "a special and extraordinary writ." *McClain* v. *Robinson*, 189 Conn. 663, 668, 457 A.2d 1072 (1983). It is thus available to address "fundamental unfairness or miscarriage of justice"; *Bunkley* v. *Commissioner of Correction*, 222 Conn. 444, 461, 610 A.2d 598 (1992), overruled in part on other grounds by *Small* v. *Commissioner of Correction*, 286 Conn. 707, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008); and "not merely an error which might entitle [the petitioner] to relief on appeal." (Internal quotation marks omitted.) *Safford* v. *Warden*, 223 Conn. 180, 190, 612 A.2d 1161 (1992). The habeas petitioner "does not come before the [c]ourt as one who is innocent, but on the contrary as one who has been convicted by due process of law . . . ." (Internal quotation marks omitted.) *Summerville* v. *Warden*, 229 Conn. 397, 423, 641 A.2d 1356 (1994). Accordingly, the petitioner "bears a heavy burden of proof" when attacking a presumptively valid conviction. *Lubesky* v. *Bronson*, 213 Conn. 97, 110, 566 A.2d 688 (1989). Lastly, because this court has recognized that a "habeas . . . petition may not be employed as a substitute for a direct appeal"; *Summerville* v. *Warden*, supra, 429; it makes no sense to abandon the cause and prejudice standard

in favor of a harmless error standard generally applicable to a direct appeal in the relatively narrow category of cases involving *Salamon* claims.

I fully appreciate the liberty interests of petitioners who believe that they have been unfairly convicted and incarcerated for crimes they did not commit. The procedural default rule, however, provides an appropriate mechanism for reviewing *Salamon* claims because it does not forbid petitioners from bringing these claims. It simply requires petitioners to establish good cause and actual prejudice for failing to raise the claims at trial or on direct appeal. Furthermore, the cause and prejudice standard has been applied consistently in habeas proceedings without any apparent problem for more than two and one-half decades. See *Crawford* v. *Commissioner of Correction*, 294 Conn. 165, 186, 982 A.2d 620 (2009) ("[s]ince *Jackson* [v. *Commissioner of Correction*, 227 Conn. 124, 629 A.2d 413 (1993)], this court consistently and broadly has applied the cause and prejudice standard to trial level and appellate level procedural defaults in habeas corpus petitions"). Thus, abandoning that standard in favor of a different standard for the specific purpose of deciding *Salamon* claims would create an incongruity in our law that would encourage other petitioners to seek exceptions to, and potentially undermine, the procedural default rule.

The majority's *only* justifications for abandoning the rule are derived from reasoning in *Luurtsema* that did not reflect the views of a majority of this court. The first justification is that "application of the procedural default bar to protect finality of judgments seems inconsistent with the reasoning in [*Luurtsema*] that 'the interests of finality must give way to the demands of liberty and a proper respect for the intent of the legislative branch.' " Text accompanying footnote 8 of the majority opinion, quoting *Luurtsema* v. *Commissioner of Correction*, supra, 299 Conn. 766 (plurality opinion). As previously discussed, however, the court in *Luurtsema* did not adopt a per se rule in favor of full retroactivity. The court merely held that *Salamon* and *Sanseverino* should apply retroactively in answering "yes" to both reserved questions because it was unable to achieve a majority consensus on the scope of its holding. Insofar as there was any agreement whatsoever on the issue, a plurality of three justices concluded that, although there should be a general presumption in favor of full retroactivity, "there are various situations in which to deny retroactive relief may be neither arbitrary nor unjust"; *Luurtsema* v. *Commissioner of Correction*, supra, 299 Conn. 760; and, accordingly, the court should grant only limited exceptions to this general presumption. See id., 764.

The majority next observes that *Salamon* claims should not be subject to procedural default in habeas

proceedings because *Luurtsema* did not cite procedural default as a limitation on its retroactivity ruling, which the majority claims would have been a "natural response to the state's floodgates argument . . . ." This justification is equally unpersuasive. The failure of the court in *Luurtsema* to consider the procedural default bar indicates nothing about its views on the subject because procedural default was not an issue in that case, Luurtsema's counsel having sought a *Salamon* type instruction at Luurtsema's trial. There is thus no support for the majority's speculation that the plurality's failure to discuss procedural default in *Luurtsema* meant that it did not view procedural default as a limitation on a habeas court's review of a *Salamon* claim. If that had been the case, the plurality surely would have expressed its view directly.

The majority's final justification for abandoning the procedural default rule is that "[t]he court [in *Luurtsema*] cited the harmless error standard for direct appeal . . . as the limiting mechanism for colorable but ultimately nonmeritorious claims." The plurality in *Luurtsema*, however, was not discussing the issue of whether harmless error or the procedural default rule should be applied to *Salamon* claims in habeas proceedings when it made a passing reference to the harmless error standard. Rather, the plurality was considering the state's policy argument that "a finding of retroactivity would flood the court system with habeas petitioners seeking to overturn kidnapping convictions . . . ." (Internal quotation marks omitted.) *Luurtsema* v. *Commissioner of Correction*, supra, 299 Conn. 769. In responding to that argument, the plurality cited *State* v. *Hampton*, supra, 293 Conn. 463–64, in which the defendant had raised a *Salamon* claim in his direct appeal, to make the point that there was no evidence that the court would be flooded with petitioners seeking new trials, but, instead, "courts [would] be able to dispose summarily of many cases where it is sufficiently clear from the evidence presented at trial that the petitioner was guilty of kidnapping, as properly defined, [and] that any error arising from a failure to instruct the jury in accordance with the rule in *Salamon* was harmless." *Luurtsema* v. *Commissioner of Correction*, supra, 769–70. As a consequence, the plurality's reference to harmless error in this completely different context cannot be taken as its considered view regarding the standard that should be applied in reviewing *Salamon* claims in habeas proceedings.

## IV

Applying the procedural default rule in the present case, I would conclude that the petitioner has not demonstrated good cause for or actual prejudice from his failure to seek a *Salamon*-type instruction at trial or to raise the issue on direct appeal. This court has stated that "[t]he cause and prejudice test is designed to pre-

vent full review of issues in habeas . . . proceedings that counsel did not raise at trial or on appeal for reasons of tactics, inadvertence or ignorance . . . ." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, supra, 285 Conn. 567–68. In addition, "[b]ecause [c]ause and prejudice must be established conjunctively, [the court] may dispose of [the procedurally defaulted] claim if the petitioner fails to meet either prong." (Internal quotation marks omitted.) *Thorpe* v. *Commissioner of Correction*, 73 Conn. App. 773, 780, 809 A.2d 1126 (2002).

With respect to the first prong of the test, the petitioner alleged in his habeas pleadings that his claim of an improper jury instruction was not procedurally defaulted because "futility provided him good cause for not previously raising the claim" and because he "lacked a reasonable basis for raising the . . . claim at either the trial or appellate level based on a long line of consistently adverse case law, beginning with *State* v. *Chetcuti*, 173 Conn. 165 [377 A.2d 263] (1977), which adopted the definition of kidnapping that the petitioner was convicted under." The petitioner also alleged that his "criminal trial and direct appeal were both decided before the *Salamon* decision in 2008, and he had no reason to believe that a challenge to the kidnapping instruction held any merit before that [decision]." Although the Appellate Court agreed with this reasoning; see *Hinds* v. *Commissioner of Correction*, supra, 151 Conn. App. 854–55; I do not.

As previously explained, "[t]he existence of cause for a procedural default must ordinarily turn on whether the [petitioner] can show that some objective factor external to the defense impeded counsel's efforts to comply with the [s]tate's procedural rule." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, supra, 285 Conn. 568. Thus, for example, "a showing that the factual or legal basis for a claim was not reasonably available to counsel . . . or . . . some interference by officials . . . would constitute cause under this standard." (Internal quotation marks omitted.) Id.

Mindful of these principles, I do not believe that futility is a persuasive argument because Connecticut's decisional law interpreting the kidnapping statutes was not settled at the time of the petitioner's trial in 2002 and his direct appeal in 2004. In *Salamon*, this court observed that it "never [had] undertaken an extensive analysis of whether our kidnapping statutes warrant the broad construction that [the court had] given them." *State* v. *Salamon*, supra, 287 Conn. 524. Justice Katz likewise explained in her concurring opinion in *Luurtsema* that "*Salamon* rested on grounds that never had been considered by this court. Not only was it the first time that this court examined the intent element of the kidnapping statutes and the first time that we examined

the circumstances surrounding the statutes' enactment, but it also was the first time that this court considered the meaning of the statute en banc. . . . Our reexamination was prompted in part by an issue expressly left open in our prior decisions regarding whether the existing interpretation could lead to bizarre, and therefore legislatively unintended, results." (Citation omitted.) *Luurtsema* v. *Commissioner of Correction*, supra, 299 Conn. 786 (*Katz, J.*, concurring). Accordingly, there was no reason for the petitioner to believe that it would have been futile to raise such a claim.

There also was a reasonable basis at the time of the petitioner's trial and direct appeal on which to challenge this court's interpretation of the kidnapping statutes because, even though the court had supported a broad interpretation of the statutes on a number of occasions over a lengthy period of time, defendants continued to challenge it, and at least two members of the court expressed contrary views in concurring and dissenting opinions issued around the time of the petitioner's trial and direct appeal in 2002 and 2004, respectively. See *State* v. *Luurtsema*, supra, 262 Conn. 208–209, 211 (*Katz, J.*, dissenting in part) (noting that, although kidnapping did not merge with sexual assault under Connecticut law, court had indicated that "there may be factual situations in which charging a defendant with kidnapping based upon the most minuscule movement would result in an absurd and unconscionable result," such as when kidnapping is "integral or incidental to the crime of rape" [internal quotation marks omitted]); *State* v. *Niemeyer*, 258 Conn. 510, 528, 529, 782 A.2d 658 (2001) (*McDonald, C. J.*, concurring) (expressing view that kidnapping statute should apply only "to true kidnapping situations and not . . . to crimes . . . in which some confinement or asportation occurs as a subsidiary incident," and that evidence of restraint by defendant in that case supported kidnapping conviction because "[t]he jury could find that restraint was not merely incidental to the assault" [internal quotation marks omitted]); but see, e.g., *State* v. *Vass*, 191 Conn. 604, 614, 469 A.2d 767 (1983) (rejecting defendant's claim that court improperly denied request to charge jury that he could not be convicted on kidnapping count if jury found kidnapping was " 'integral or incidental' " to crime of rape because "[t]hat [was] not the law in this state"); *State* v. *Briggs*, 179 Conn. 328, 338, 426 A.2d 298 (1979) (rejecting defendant's request to adopt "merger doctrine" that would preclude prosecution for kidnapping that is " 'merely incidental' " to sexual assault), cert. denied, 447 U.S. 912, 100 S. Ct. 3000, 64 L. Ed. 2d 862 (1980); *State* v. *Chetcuti*, supra, 173 Conn. 168–69 (rejecting challenge to kidnapping statutes as unconstitutional on ground they can be applied to other criminal activity to which kidnapping is only incidental and subsidiary).[4]

Rather than view this history of continuing challenges

to the court's interpretation of the kidnapping statutes as a reason to conclude that there was no reasonable basis to raise a *Salamon* claim or that such a claim would be futile, the petitioner should have understood the dissenting opinion of Justice Katz in 2002 and the concurring opinion of Chief Justice McDonald in 2001, in which they questioned this court's broad interpretation of the kidnapping statutes, as an invitation to raise the claim again in the hope that the court would revisit the issue and alter its interpretation, as it did in *Salamon* only a few years later. As this court has previously stated, "[t]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, supra, 218 Conn. 422, quoting *Murray* v. *Carrier*, supra, 477 U.S. 486–87. A habeas petitioner also "may not bypass the state courts simply because he thinks they will be unsympathetic to the claim. Even a state court that has previously rejected a constitutional argument may decide, upon reflection, that the contention is valid." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, supra, 218 Conn. 422. I would therefore conclude that the petitioner did not establish good cause for failing to seek a *Salamon* type instruction at trial or for failing to raise a claim on direct appeal regarding the trial court's failure to give such an instruction, as other defendants had done.

In light of this conclusion, there is no need to address whether the petitioner satisfied the second prong of the test required under the procedural default rule. I nonetheless agree with Justice Eveleigh's thorough analysis of this issue in his dissenting opinion and with his conclusion that the petitioner did not demonstrate that he suffered actual prejudice because of the trial court's failure to give the jury a *Salamon* instruction.

For all of the foregoing reasons, I respectfully dissent.

[1] The petitioner makes this relatively brief argument in the middle of his twenty-one page discussion of the procedural default rule and the conclusion of the habeas court and the Appellate Court that the petitioner had demonstrated the good cause and actual prejudice required under the rule to bar a procedural default.

[2] The majority describes the parties' failure to raise such a claim as "beside the point." Footnote 4 of the majority opinion. I strongly disagree with this cavalier dismissal of such an obvious and important omission. If the majority wishes to address whether the procedural default rule should be replaced by a different standard in the context of a *Salamon* claim, it must do so by following the court's routine practice of ordering the parties to file supplemental briefs on the issue, as we have done when reexamining the standard of review for resolving habeas claims alleging ineffective assistance of counsel; see, e.g., *Small* v. *Commissioner of Correction*, 286 Conn. 707, 715 n.5, 946 A.2d 1203 (2008) (ordering supplemental briefing on issue of appropriate standard of review in habeas proceedings for claims of ineffective assistance of counsel premised on failure of trial and appellate counsel to raise, at trial and on direct appeal, respectively, issue of lack of instruction on essential element of crime charged), cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008); *Ghant* v. *Commissioner of Correction*, 255 Conn. 1, 11 n.7, 761 A.2d 740 (2000) (ordering supplemental briefing on standard to be applied in assessing inef-

fective assistance of counsel claim); and in numerous other cases involving a wide variety of issues. See, e.g., *In re Shane M.*, 318 Conn. 569, 587 and n.16, 122 A.3d 1247 (2015) (ordering supplemental briefing to consider appropriate standard of review of trial court's finding that parent has failed to achieve sufficient rehabilitation); *State* v. *Kalphat*, 285 Conn. 367, 374 and n.11, 939 A.2d 1165 (2008) (ordering supplemental briefing concerning standing of defendant to challenge legality of search); *Brown* v. *Soh*, 280 Conn. 494, 500, 909 A.2d 43 (2006) (ordering supplemental briefing on impact of prior decision on exculpatory contracts signed by public users of commercial recreational services); *State* v. *DeCaro*, 280 Conn. 456, 468–69, 908 A.2d 1063 (2006) (ordering supplemental briefing regarding whether, in light of trial court's finding regarding compliance with subpoena, judgment should be affirmed); *State* v. *Kirby*, 280 Conn. 361, 387, 908 A.2d 506 (2006) (ordering supplemental briefing on whether certain statements properly admitted at trial); *Dark-Eyes* v. *Commissioner of Revenue Services*, 276 Conn. 559, 568 n.9, 887 A.2d 848 (ordering supplemental briefing on impact of United States Supreme Court decision involving city's assessment of property taxes against Indian tribe), cert. denied, 549 U.S. 815, 127 S. Ct. 347, 166 L. Ed. 2d 26 (2006); *Almada* v. *Wausau Business Ins. Co.*, 274 Conn. 449, 454–55, 876 A.2d 535 (2005) (ordering supplemental briefing on impact of prior decision on claim of tortious processing of workers' compensation claim); *Location Realty, Inc.* v. *General Financial Services, Inc.*, 273 Conn. 766, 771, 873 A.2d 163 (2005) (ordering supplemental briefing on applicability of particular statute to issue on appeal); *Bloom* v. *Gershon*, 271 Conn. 96, 105–106, 856 A.2d 335 (2004) (ordering supplemental briefing on impact of prior decision on whether Claims Commissioner had authority to permit apportionment complaint against state); *Nussbaum* v. *Kimberly Timbers, Ltd.*, 271 Conn. 65, 70, 856 A.2d 364 (2004) (ordering supplemental briefing on whether enforceability of arbitration provision in contract is question to be decided in first instance by arbitrator); *Pikulski* v. *Waterbury Hospital Health Center*, 269 Conn. 1, 6 n.3, 848 A.2d 373 (2004) (ordering supplemental briefing on applicability of recent decision to issue raised on appeal); *Mandell* v. *Gavin*, 262 Conn. 659, 662 n.3, 816 A.2d 619 (2003) (ordering supplemental briefing on meaning of statutory term); *Cox Cable Advisory Council* v. *Dept. of Public Utility Control*, 259 Conn. 56, 62 n.8, 788 A.2d 29 (ordering supplemental briefing on whether federal legislation preempted action of advisory council to local cable television company), cert. denied, 537 U.S. 819, 123 S. Ct. 95, 154 L. Ed. 2d 25 (2002); *Darien* v. *Estate of D'Addario*, 258 Conn. 663, 670, 784 A.2d 337 (2001) (ordering supplemental briefing on meaning of statutory terms and relationship of certain statutes to one another); *Quarry Knoll II Corp.* v. *Planning & Zoning Commission*, 256 Conn. 674, 699–700, 780 A.2d 1 (2001) (ordering supplemental briefing on whether statutory amendment should be retroactively applied); *Oxford Tire Supply, Inc.* v. *Commissioner of Revenue Services*, 253 Conn. 683, 689, 755 A.2d 850 (2000) (ordering supplemental briefing on whether statutory amendment should be retroactively applied); *State* v. *Hart*, 221 Conn. 595, 607–608 n.10, 605 A.2d 1366 (1992) (ordering supplemental briefing on whether, after defendant has raised issue of drug dependency, state or defendant has burden of proof under statutory scheme and what standard applies).

[3] The majority states that the plurality opinion in *Luurtsema* has precedential value because Justice Katz "agree[d] with the plurality's thoughtful explanation as to why we should reject the state's call to adopt a per se rule against retroactivity and its equally persuasive rejection of the state's arguments against affording relief to [Luurtsema]," her "sole disagreement [being] with the [plurality's] resolution of [the retroactivity] issue . . . [and] its recognition of the possibility of unusual circumstances in which retroactivity would not apply." (Internal quotation marks omitted.) Footnote 7 of the majority opinion. The majority, however, misses the point that a majority of the panel members in *Luurtsema* failed to reach agreement on the crucial issue of how the retroactivity decision of the court should be applied. As previously discussed, Justice Katz supported a per se rule in favor of full retroactivity; *Luurtsema* v. *Commissioner of Correction*, supra, 299 Conn. 791; the plurality supported a general presumption in favor of retroactivity subject to certain qualifications that Justice Katz deemed unworkable; id., 764 (plurality opinion); see id., 791 (*Katz, J.*, concurring); Justice Palmer expressed his hesitation to support a per se rule in favor of full retroactivity at that time; see id., 797–98; and Justice McLachlan concurred in the judgment with little explanation. See id., 798–99. Given these differing views, it cannot be said that *Luurtsema* has any precedential value with respect to the critical question before this court of the standard that should be applied

when considering the retroactive application of *Salamon* in a habeas proceeding. The fact that Justice Katz may have agreed with the plurality's explanation as to why it rejected the state's policy arguments in favor of a per se rule against retroactivity simply does not relate to this question. Moreover, even if it did, our well established law provides that the holding of a fragmented court "may be viewed [only] as the position taken by those [m]embers who concurred in the judgments on the *narrowest* grounds . . . ." (Emphasis added; internal quotation marks omitted.) *State* v. *Ross*, supra, 272 Conn. 604 n.13. Accordingly, the majority cannot view Justice Katz' concurring opinion, together with the opinion of the plurality, as supporting the conclusion that the procedural default rule does not apply to *Salamon* claims because Justice Katz had the *broadest* view of retroactivity, not the narrowest, which means that the plurality opinion in *Luurtsema* has no legal effect, contrary to what the majority would like to believe.

[4] In *Correia* v. *Rowland*, 263 Conn. 453, 820 A.2d 1009 (2003), this court also recognized the United States Supreme Court's holding in the context of procedural default that, "where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable . . . procedures." (Internal quotation marks omitted.) Id., 463, quoting *Reed* v. *Ross*, 468 U.S. 1, 16, 104 S. Ct. 2901, 82 L. Ed. 2d 1 (1984). Even if the present claim was a constitutional claim, however, the frequency with which prior defendants raised it or this court discussed it prior to or around the time of the trial and direct appeal of the petitioner in the present case clearly demonstrates that it is not a novel claim.